## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA; THE STATE OF MICHIGAN; THE STATE OF CALIFORNIA; THE STATE OF COLORADO; THE STATE OF GEORGIA; THE STATE OF INDIANA; THE STATE OF LOUISIANA; THE STATE OF MASSACHUSETTS; THE STATE OF MINNESOTA; THE STATE OF MISSOURI; THE STATE OF NEVADA; THE STATE OF NEW MEXICO; THE STATE OF NEW YORK; THE STATE OF OKLAHOMA; THE STATE OF TENNESSEE; THE STATE OF TEXAS; THE STATE OF VIRGINIA; and THE STATE OF WASHINGTON; ex rel. SARAH RILEY, Ph.D., DABCC, FACB, individually, and jointly and severally, | Case No. 21- _____  Honorable: _____  **FILED UNDER SEAL**  **DO NOT PLACE IN PRESS BOX**  **DO NOT ENTER ON PACER** |

Plaintiffs,

v.

AVERTEST, LLC d/b/a Averhealth, a Virginia limited liability company,

Defendant.

---

## COMPLAINT

## FOR

**VIOLATION OF FALSE CLAIMS ACT (31 U.S.C. § 3729 *et seq.*); MICHIGAN MEDICAID FALSE CLAIMS ACT (M.C.L. § 400.601 *et seq.*); CALIFORNIA FALSE CLAIMS ACT (Government Code § 12650 GC, *et seq.*); COLORADO MEDICAID FALSE CLAIMS ACT (C.R.S. 25.5-4-303.5, *et seq.*); GEORGIA TAXPAYER PROTECTION FALSE CLAIMS ACT (Ga. Code Ann. §23-3-120, *et seq.*); INDIANA FALSE CLAIMS AND WHISTLEBLOWER PROTECTION ACT (Ind. Code § 5-11-5.5-1 *et seq.*); INDIANA MEDICAID FALSE CLAIMS AND WHISTLEBLOWER PROTECTION ACT (Ind. Code § 5-11-5.7-1 *et seq.*); LOUISIANA MEDICAL ASSISTANCE PROGRAMS INTEGRITY LAW (La. R.S. § 46:437.1 *et seq.*); MASSACHUSETTS FALSE CLAIMS ACT (ALM GL ch. 12, § 5, *et seq.*); MINNESOTA FALSE CLAIMS ACT (Minn. Stat. §**

**15C.01,** *et seq.***); MISSOURI HEALTH CARE PAYMENT FRAUD AND ABUSE ACT (Mo. Rev. Stat. § 191.900,** *et seq.***); NEVADA FALSE CLAIMS ACT (Nev. Rev. Stat. § 357.010,** *et seq.***); NEW MEXICO FRAUD AGAINST TAXPAYERS ACT (N.M. Stat. Ann. § 44-9-1,** *et seq.***); NEW MEXICO FALSE CLAIMS ACT (N.M. Stat. Ann. § 27-14-1,** *et seq.***); NEW YORK STATE FALSE CLAIMS ACT (NY CLS St Fin § 186,** *et seq.***); OKLAHOMA MEDICAID FALSE CLAIMS ACT (63 Okl. St. § 5053,** *et seq.***); TENNESSEE FALSE CLAIMS ACT (Tenn. Code Ann. § 4-18-101,** *et seq.***); TENNESSEE MEDICAID FALSE CLAIMS ACT (Tenn. Code Ann. § 71-5-181,** *et seq.***); TEXAS MEDICAID FRAUD PREVENTION LAW (Tex. Hum. Res. Code § 36.001,** *et seq.***); AWARD FOR REPORTING MEDICAID FRAUD, ABUSE, OR OVERCHARGES (Tex. Gov't Code § 531.101); VIRGINIA FRAUD AGAINST TAXPAYERS ACT (Va. Code Ann. § 8.01-216.1,** *et seq.***); AND WASHINGTON STATE MEDICAID FRAUD FALSE CLAIMS ACT (Rev. Code Wash. (ARCW) § 74.66.005,** *et seq.***)**

**AGAINST**

**AVERTEST, LLC, d/b/a Averhealth, A VIRGINIA LIMITED LIABILITY COMPANY**

**TRIAL BY JURY REQUESTED**

Pursuant to 31 U.S.C. § 3730(b)(1), M.C.L. § 400.610a(1), and similar False Claims Acts of the States of California, Colorado, Georgia, Indiana, Louisiana, Massachusetts, Minnesota, Missouri, Nevada, New Mexico, New York, Oklahoma, Tennessee, Texas, Virginia and Washington, Relator Sarah Riley, Ph.D., DABCC, FACB ("Relator"), individually, jointly and severally, and on behalf of the United States of America, the State of Michigan and the States of California, Colorado, Georgia, Indiana, Louisiana, Massachusetts, Minnesota, Missouri, Nevada, New Mexico, New York, Oklahoma, Tennessee, Texas, Virginia and Washington, by their attorneys, Olsman MacKenzie Peacock & Wallace, PC and Hoyer Law Group, PLLC, bring this civil action against Avertest, LLC d/b/a Averhealth, a Virginia Limited Liability Company ("Avertest") under the federal False Claims Act ("FCA"), the Michigan Medicaid False Claims Act ("MMFCA"), and the False Claims Acts of the States of California, Colorado, Georgia, Indiana, Louisiana, Massachusetts, Minnesota, Missouri, Nevada, New Mexico, New York, Oklahoma, Tennessee, Texas, Virginia and Washington.

-2-

## **INTRODUCTION**

This case involves Avertest, which provides substance use monitoring services to courts and social service agencies that operate at the intersection of healthcare and criminal justice. Avertest serves more than 2,300 courts and treatment providers across 30 states.[1] The Avertest drug screening and confirmation testing and/or alcohol testing is used by courts and social service agencies as a driver for incentives and sanctions, including incarceration, job or home loss due to incarceration, and losing children by termination of parental rights and to foster care.

Avertest claims and certifies to the various governments that its testing methods apply scientifically valid and forensically defensible methodologies, when in reality, such claims are false. During her seven (7) weeks as the Laboratory Director of their toxicology laboratory in St. Louis, Missouri, Sarah Riley, Ph.D., DAB (CC, TC), FACB, noticed significant quality control concerns with raw data and testing processes of all samples that were performed in the laboratory, which are a long-standing problem. Avertest's testing methods do not meet industry standards nor the standards set by the American College of Pathologists – Forensic Drug Testing section (CAP-FDT), which accredits the lab. Dr. Riley personally witnessed Avertest technicians using fake calibration curves critical to identifying drugs and their concentration in testing samples, manipulating test results, and covering up its practices to auditors reviewing and accrediting the lab.

Dr. Riley believes that approximately 30% of the drug tests performed by Avertest are inaccurate (false positives or false negatives). This is in sharp contrast to Avertest's claim that it provides forensically defensible results with a 97% accuracy rate. Dr. Riley observed that in

---

[1] The states in which Avertest does business include Alabama, Arizona, Arkansas, California, Colorado, Georgia, Idaho, Indiana, Kansas, Kentucky, Louisiana, Massachusetts, Michigan, Minnesota, Missouri, Nevada, New Mexico, New York, Ohio, Oklahoma, Oregon, Pennsylvania, Tennessee, Texas, Utah, Virginia, Washington, and Wisconsin.

practice, meeting deadlines for test results is more important to Avertest than accuracy. Dr. Riley raised her concerns with Avertest and made recommendations for how to correct the problems. However, her concerns and recommendations were dismissed, prompting her to resign.

Avertest makes knowingly false claims and uses false records or statements to get false claims paid by federal and state governments. In addition, Avertest fraudulently misrepresents its capabilities to comply with industry standards in performing drug screening and confirmation testing and/or alcohol testing. These false claims are intended to induce federal and state governments into entering into contracts for such services.

In addition, significant, life altering decisions regarding incarceration and child custody are made on the basis of these false tests. For example, individuals who have been victim of Avertest's drug screening and testing have lost custodial rights over their children or have been thrown in jail for probation or parole violations. There are numerous examples where Avertest's false positive tests have resulted in compromised care of vulnerable children throughout the country.

To support their claims for this fraudulent conduct, Relator alleges as follows:

### JURISDICTION AND VENUE

1.      This action arises under 31 U.S.C. § 3729 *et seq.*, also known as the False Claims Act to recover treble damages and civil penalties on behalf of the United States of America arising out of Defendant's violations of the FCA

2.      This action also arises under the Michigan Medicaid False Claims Act, M.C.L. § 400.601 *et seq.*, to recover treble damages and civil penalties on behalf of the State of Michigan arising out of Defendant's violations of the MMFCA.

3.      This action also arises under the California False Claims Act, Government Code §

12650 GC, *et seq.*, to recover treble damages and civil penalties on behalf of the State of California

arising out of Defendant's violations of the CFCA.

4.      This action also arises under the Colorado Medicaid False Claims Act, C.R.S. 25.5-

4-303.5, *et seq.*, to recover treble damages and civil penalties on behalf of the State of Colorado

arising out of Defendant's violations of the CMFCA.

5.      This action also arises under the Georgia Taxpayer Protection False Claims Act,

Ga. Code Ann. §23-3-120, *et seq.*, to recover treble damages and civil penalties on behalf of the

State of Georgia arising out of Defendant's violations of the GTPFCA.

6.      This action also arises under the Indiana False Claims and Whistleblower

Protection Act, Ind. Code § 5-11-5.5-1 *et seq*., and the Indiana Medicaid False Claims and

Whistleblower Protection Act, Ind. Code § 5-11-5.7-1 *et seq.*, to recover treble damages and civil

penalties on behalf of the State of Indiana arising out of Defendant's violations of the IFC&WPA

and IMFC&WPA;

7.      This action also arises under the Louisiana Medical Assistance Programs Integrity

Law, La. R.S. § 46:437.1 *et seq*., to recover treble damages and civil penalties on behalf of the

State of Louisiana arising out of Defendant's violations of the LMAPIL.

8.      This action also arises under the Massachusetts False Claims Act, ALM GL ch. 12,

§ 5, *et seq*., to recover treble damages and civil penalties on behalf of the State of Massachusetts

arising out of Defendant's violations of the MFCA.

9.      This action also arises under the Minnesota False Claims Act, Minn. Stat. § 15C.01,

*et seq*., to recover treble damages and civil penalties on behalf of the State of Minnesota arising

out of Defendant's violations of the MFCA.

10.     This action also arises under the Missouri Health Care Payment Fraud and Abuse Act, Mo. Rev. Stat. § 191.900, *et seq.*, to recover treble damages and civil penalties on behalf of the State of Missouri arising out of Defendant's violations of the MHCPFAA.

11.     This action also arises under the Nevada False Claims Act, Nev. Rev. Stat. § 357.010, *et seq.*, to recover treble damages and civil penalties on behalf of the State of Nevada arising out of Defendant's violations of the NFCA.

12.     This action also arises under the New Mexico Fraud Against Taxpayers Act, N.M. Stat. Ann. § 44-9-1, *et seq.*, and the New Mexico False Claims Act, N.M. Stat. Ann. § 27-14-1, *et seq.*, to recover treble damages and civil penalties on behalf of the State of New Mexico arising out of Defendant's violations of the NMFATA and the NMFCA.

13.     This action also arises under the New York State False Claims Act, NY CLS St Fin § 186, *et seq.*, to recover treble damages and civil penalties on behalf of the State of New York arising out of Defendant's violations of the NYSFCA.

14.     This action also arises under the Oklahoma Medicaid False Claims Act, 63 Okl. St. § 5053, *et seq.*, to recover treble damages and civil penalties on behalf of the State of Oklahoma arising out of Defendant's violations of the OMFCA.

15.     This action also arises under the Tennessee False Claims Act, Tenn. Code Ann. § 4-18-101, *et seq.*, and the Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-181, *et seq.*, to recover treble damages and civil penalties on behalf of the State of Tennessee arising out of Defendant's violations of the TFCA and the TMFCA.

16.     This action also arises under the Texas Medicaid Fraud Prevention Law, Tex. Hum. Res. Code § 36.001, *et seq.*, and the Award for Reporting Medicaid Fraud, Abuse, or Overcharges,

Tex. Gov't Code § 531.101, to recover treble damages and civil penalties on behalf of the State of Texas arising out of Defendant's violations of the TMFPL and the ARMFAO.

17.     This action also arises under the Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.1, *et seq*., to recover treble damages and civil penalties on behalf of the State of Virginia arising out of Defendant's violations of the VFATA.

18.     This action also arises under the Washington State Medicaid Fraud False Claims Act, Rev. Code Wash. (ARCW) § 74.66.005, *et seq*., to recover treble damages and civil penalties on behalf of the State of Washington arising out of Defendant's violations of the WSMFFCA.

19.     Under § 3732 of the FCA, this Court has jurisdiction over actions brought under the FCA. Furthermore, jurisdiction over this action is conferred on this Court by 28 U.S.C. § 1331 because this civil action arises under the laws of the United States.

20.     This Court has supplemental jurisdiction over all other claims set forth in this Complaint because these claims are so related to the claims arising under the FCA that they form part of the same case or controversy. 28 U.S.C. § 1367.

21.     Venue is proper in this district pursuant to § 3732(a) of the FCA, which provides that "any action under § 3730 may be brought in any judicial district in which the Defendant or, in the case of multiple Defendants, any one Defendant can be found, resides, transacts business, or in which any act proscribed by § 3729 occurred." At all times material hereto, Defendant regularly conducted business within the State of Michigan (and the several other states) and within this judicial district. Additionally, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1)-(2).

**FILING UNDER SEAL**

22.     Under the FCA, this Complaint is to be filed in camera and remain under seal for a period of at least sixty (60) days and shall not be served on Defendant until the Court so orders. The United States Government and/or the various states may elect to intervene and proceed with the action after the governments receive the Complaint.

23.     As required under the several False Claims Acts, Relator is an original source of and has or will disclose substantially all material evidence and information in her possession to the United States Attorney General, the Michigan Attorney General, the California Attorney General, the Colorado Attorney General, the Georgia Attorney General, the Indiana Attorney General, the Louisiana Attorney General, the Massachusetts Attorney General, the Minnesota Attorney General, the Missouri Attorney General, the Nevada Attorney General, the New Mexico Attorney General, the New York Attorney General, the Oklahoma Attorney General, the Tennessee Attorney General, the Texas Attorney General, the Virginia Attorney General, and the Washington Attorney General, prior to or following the filing of the complaint in this action, and has and will cooperate with the governments in their investigation of these allegations.

## **PARTIES**

24.     Sarah Riley, Ph.D., DABCC, FACB, is a resident of the state of Missouri and a former employee of Defendant Avertest who worked in the Laboratory located in St. Louis, Missouri, from September 14, 2020 to November 3, 2020. Dr. Riley resigned from Avertest after only seven (7) weeks due to her discovery that Avertest was submitting false claims to federal and state governments, and fraudulently inducing those governments to enter into contracts.

25.     Dr. Riley is a clinical chemist and toxicologist. Currently, she is the Director of the St. Louis University Forensic Toxicology Laboratory, the Medical Director of Clinical Toxicology at St. Louis University Hospital, and an Associate Professor of Pathology and Pediatrics at St.

Louis University. In addition to toxicology, Dr. Riley has extensive training in laboratory management and quality control processes. She is involved in many professional organizations including the Organization of Scientific Area Committees (OSAC), which develops quality procedure standards in the field of toxicology. Dr. Riley is an expert in Mass Spectrometry and has international recognition in this area.

26.     Defendant Avertest has National Headquarters in Richmond, Virginia, and a Laboratory in St. Louis, Missouri. The states in which Avertest does business include Alabama, Arizona, Arkansas, California, Colorado, Georgia, Idaho, Indiana, Kansas, Kentucky, Louisiana, Massachusetts, Michigan, Minnesota, Missouri, Nevada, New Mexico, New York, Ohio, Oklahoma, Oregon, Pennsylvania, Tennessee, Texas, Utah, Virginia, Washington, and Wisconsin.

27.     Defendant Avertest provides drug testing specific to criminal justice programs. Since 1995, Avertest has specialized in providing substance use monitoring services to courts and social service agencies that operate at the intersection of healthcare and criminal justice. Today, Avertest serves more than 2,300 courts and treatment providers across 30 states, integrating all substance use monitoring activities.

## OVERVIEW OF FRAUDULENT CONDUCT AND ACTIVITIES

28.     On September 14, 2020, Dr. Riley began working for Avertest as the Laboratory Director of their toxicology laboratory in St. Louis, Missouri. The Laboratory Director oversees Quality Assurance in the entire laboratory and is scientifically responsible for the work produced. The Director ensures that all laboratory practices are in accordance with its accrediting body (the College of American Pathologists, or CAP) and that the results are accurate.

29.     On its website, Avertest recognizes that "[a]ccurate and reliable testing results are crucial in the criminal justice system," and that "laboratory results, often the only objective data

in a treatment court program, are the most effective way to guide treatment court participants towards recovery." Avertest further recognizes that "[i]t is critical that drug testing in treatment courts follow [Evidence-based practices] because there are real life implications for inaccurate tests."

30.     Avertest further recognizes that it is critical that drug test results are accurate because such results can be a driver for incentives and sanctions, including life disruption caused by incarceration, job or home loss due to incarceration, termination of parental rights, and losing of children to foster care.

31.     Avertest claims that it meets evidence-based practices and has a 97% accuracy rate and the ability to deliver results the next-business day.

32.     The Avertest laboratory in St. Louis, Missouri, performs court-mandated toxicology testing for 30 states. Avertest has fifteen (15) Mass Spectrometers and processes thousands of tests per day.

33.     Avertest represents to federal and state governments that it will comply with industry standards and all federal requirements pertaining to drug testing, including the College of American Pathology – Forensic Drug Testing Certification (CAP-FDT). In actuality, however, Avertest does not comply with these standards.

34.     For example, CAP-FDT Certification requires that the laboratory perform both screening and confirmatory testing of forensic drug samples in the facility.

35.     Avertest does not perform both screening and confirmatory testing of all forensic drug samples in the facility.[2]

---

[2] For example, screening was not performed on any samples from the state of Michigan. On May 15, 2019, Avertest began a five-year contract with the Michigan Department of Health and Human Services (MDHHS) to perform toxicology testing for Michigan. This contract specifically listed the cut-off levels to be used by Avertest on all

36.     CAP-FDT Certification also requires that appropriate controls be used for all screening tests, including that controls must comprise at least 10% of the samples in a batch.

37.     Avertest regularly and intentionally failed to include controls of 10% of the samples in screening tests that were performed in the laboratory.

38.     Confirmatory testing is performed using a Mass Spectrometer, an instrument used to identify and quantify unknown substances, such as drugs, using molecular weight.

39.     To ensure the integrity of mass spectrometry test results, a laboratory must implement policies and procedures to verify test results, including the use of calibration curves, internal standards, and quality controls.

40.     An analyte is the substance of interest. To understand the instrumental response to an analyte and to predict the concentration of an analyte in a sample, a calibration curve must be created at the beginning of a run.

41.     To create the calibration curve, six control samples (calibrators) containing known concentrations of the analyte are run. The calibrators are used to construct a calibration curve against which the unknowns are interpreted.

42.     An accurate calibration curve will permit the tester to determine if the analyte is present in a sample and the concentration.

43.     CAP-FDT Certification requires that the calibration curve and quality controls be prepared along with the specimen that is being tested.

---

Michigan samples. Despite agreeing to utilize those cut-off levels in the screening test, Avertest lacked the ability to test at the low drug concentration levels specified in the contract. Therefore, Avertest just skipped this screening portion of the testing on all Michigan samples. The estimated revenue to Avertest from this contract is estimated to exceed $27,000,000.00.

44.     The calibration curve is an essential to quality control. If you do not have a calibration curve for each run, you do not have a control against which to interpret the results.

45.     If errors are encountered in running the known samples, the source of the error must be identified and corrected. The machine may require cleaning, the reagents may need to be changed, the calibration or test solutions may be wrong, and/or there could be other sources of error.

46.     Dr. Riley found that that the calibration curves at Avertest frequently and consistently failed to meet acceptance criteria.

47.     Instead of fixing the problem, Avertest would continue the run of test specimens and would import calibration curve data from runs going back days to weeks to find a curve that was within the acceptance criteria.

48.     This "historical" curve would then be used to interpret the test results.

49.     However, a calibration curve from one run cannot be used to validate testing from a different run. It is akin to comparing "apples to oranges" and is contrary to CAP-FDT guidelines.

50.     Even when Avertest used the calibration data from the same run, there were serious flaws.

51.     Avertest regularly manipulated quality control data, including changing the internal standards that were used, changing the regression of the calibration curve, and using historical quality controls.

52.     As noted above, to create the calibration curve, the tester uses a set of six (6) different solutions with known levels of the analyte. All six (6) calibrators should work on every run.

53.     The limit of detection (LOD) is the reading you get from the lowest testing calibrator. It is the lowest concentration of a substance that can be reliably detected.

54.     Avertest would arbitrarily select a LOD based on the lowest calibrator that met reporting criteria for that run. On any given day, the lowest acceptable calibrator\cut-off threshold could vary 10-100 fold.

55.     Moving thresholds made false positive tests more likely when the threshold was lower than typical. For example, the THC (marijuana) cutoff is 20 ng/ml for urine, meaning anything below that was considered negative. The moving target could result in a lower cutoff of 10 ng/ml on any given day, which would result in more positive results. Also, vice versa, the moving threshold allowed for false negatives.

56.     Another method of quality control when using a Mass Spectrometry for drug testing involves use of an internal standard (IS).

57.     The concept of an internal standard (IS) is quite simple: you just add a known amount of the IS (a substance not likely to occur in the specimen) into every sample, both calibrators and unknowns, at the beginning of a run.

58.      At the end of the analytical process, the result of the internal standard should be the exact quantity that you placed into the test. For example, if you put 5 ng/ml of Internal Standard X into your test, the result should show 5ng/ml of Internal Standard X.

59.     If a test failed to detect the known IS, then the results of the specimen analysis cannot be used, and the sample should be prepared and run again.

60.     Dr. Riley found that Avertest did not properly follow the IS calibration process.

61.     There were times when the IS went through a testing process at a certain quantity. The results would show the IS did not exist, or in other words, showed zero as the quantity, but

the analysis of the analyte (the drug in question) would still be used. Avertest would pull IS readings from other runs to hide the problem.

62.     Once a calibration curve has been prepared for a run, using IS, the acceptable quality control scheme is to prepare samples with known concentrations to be tested alongside test specimens. These samples of known concentration are called quality controls or "QCs".

63.     According to best practices in forensic toxicology and the CAP-FDT requirements, the results of the QCs must match the expected value within at least 20% for the entire run of patient samples to be scientifically acceptable and reportable.

64.     However, at Avertest, the QCs consistently failed, and the runs were still reported.

65.     The technical staff would manipulate the data significantly in order to force the QC results to be within the acceptable range.

66.     One employee described "working her magic" to get quality controls in order. Some manipulations include changing the Internal Standards used, changing the regression of the calibration curve and using historical quality controls instead of current ones.

67.     This manipulation resulted in the process not being validated and the results merely educated guesses.

68.     In order to have a reliable test result using Mass Spectrometry, you need to use calibration curves, with standardized limits of detection, which incorporate internal standards and utilize quality control samples during the run.

-14-

69.     Avertest did not do this and instead manipulated data in order to release results in the time allotted by contractual agreements,[3] and did not perform confirmatory testing of positive results.

70.     To an untrained eye, Avertest "results" would not raise a red flag. "Results" would show a level of drug present, above the state's minimum cutoff. However, the results were not accurate and had no scientific basis because they were not backed by internal standards, calibration curves or quality controls.

71.     Because of the manipulations performed by Avertest, the results of the forensic drug testing were not reproduceable nor accurate.

72.     Dr. Riley estimates that approximately 30% of the drug tests performed by Avertest were inaccurate (false positives or false negatives).

73.     Dr. Riley discovered that the issues with the screening and confirmatory testing were widespread throughout the lab and were long standing issues that had been occurring at Avertest for months, if not years.

74.     Avertest would hide information from accreditation inspectors in order to keep its accreditation with the College of American Pathologists. Specifically, while the laboratory was accredited by the CAP, the laboratory did not perform all of its testing according to the CAP-FTD requirements. Instead, Avertest only followed the CAP-FTD guidelines for one client and the laboratory manager was instructed to only show the compliant process to the CAP inspector.

---

[3] For example, one hair sample was presumptively positive for morphine; however, the calibration curve, quality controls, and internal standards were not acceptable for that batch. The results were returned to the client as if they were scientifically supported, when the result was not more than an educated guess.

75.     Dr. Riley raised her concerns with Avertest and made recommendations how to correct these widespread problems. However, her concerns and recommendations were dismissed, prompting Dr. Riley's resignation on November 3, 2020.

76.     In addition to the financial fraud committed by Avertest, its actions have resulted in significant negative impacts on families and children across the country. For example, after a drug test was falsely reported as positive for Individual "A" in a divorce proceeding, Individual "A" was no longer able to see his children without supervision. This also caused Individual "A" to become depressed, contemplate suicide, and be viewed by family and friends as a drug addict and failure.

## CONCLUSION

77.     In summary, the Defendant was engaged in a comprehensive scheme to receive monies from the government in exchange for services with complete disregard for whether the services were performed properly or performed in compliance with industry standards.

78.     Defendant's actions have resulted in the reporting of false drug screening and confirmation testing and/or alcohol testing, which is then used by the judicial system and social service agencies to determine treatment needs, to monitor compliance with court orders, and to determine whether children can continue in or return to their homes safely.

79.     Through these actions, Defendant has unlawfully and improperly received federal and state funds and retained taxpayer monies to which they are not entitled.

## I.   Violation of 31 U.S.C. § 3721 *et seq.*

80.     Relator realleges and incorporates all of the above paragraphs of this Complaint as if fully set forth herein.

81.     In performing the acts described above, Defendant, through its own acts or through the acts of its officers, knowingly and/or recklessly presented, or caused to be presented, false or fraudulent claims for payment or approval in violation of 31 U.S.C. §3729(a)(1)(A).

82.     In performing the acts described above, Defendant, through its own acts or through the acts of its officers, knowingly and/or recklessly made, used or caused to be made or used, a false record or statement material to a false or fraudulent claim in violation of 31 U.S.C. §3729(a)(1)(B).

83.     In performing the acts above, Defendant knowingly and/or recklessly made, used or caused to be made or used, a false record or statement material to an obligation to pay or transmit money to the Government and knowingly concealed or knowingly and improperly avoided an obligation to pay or transmit money to the government in violation of 31 U.S.C. § 3729(a)(1)(G).

84.     In performing the acts above, Defendant conspired to commit a violation of 31 U.S.C. §3729 subparagraph (A), (B) and (G), in violation of 31 U.S.C. §3729(a)(1)(C).

85.     Accordingly, the United States, unaware of the foregoing circumstances and conduct of the Defendant, made full payments, which resulted in its being damaged in an amount to be determined.

## II.  **Violation of M.C.L. § 400.601** *et seq.*

86.     Relator realleges and incorporates all of the above paragraphs of this Complaint as if fully set forth herein.

87.     In performing the acts described above, Defendant, through its own actions or through the acts of its officers, knowingly presented, or caused to be presented, to an officer or employee of the State of Michigan, a false claim under the Social Welfare Act in violation of M.C.L. §400.607(1).

88.     In performing the acts described above, Defendant, through its own actions or through the acts of its officers, knowingly made, used, or caused to be made or used a false record of statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the State of Michigan pertaining to a claim presented under the social welfare act, in violation of M.C.L. § 400.607(3).

89.     In performing the acts described above, Defendant, through its own acts or through the acts of its officers, entered into an agreement, combination or conspiracy to defraud the State of Michigan by obtaining or aiding another to obtain the payment or allowance of a false claim under the social welfare act, in violation of M.C.L. § 400.606.

90.     The State of Michigan, unaware of the foregoing circumstances and conduct of the Defendant, made full payments, which resulted in its being damaged in an amount to be determined.

### III. Violation of California False Claims Act, Government Code § 12650 GC, *et seq.*

91.     Relator realleges and incorporates all of the above paragraphs of this Complaint as if fully set forth herein.

92.     In performing the acts described above, Defendant knowingly presented, or caused to be presented, to the State of California or political subdivision, a false or fraudulent claim for payment or approval, in violation of § 12651(a)(1).

93.     In performing the acts described above, Defendant knowingly made, used, or caused to be made or used a false record or statement material to a false or fraudulent claim, to the State of California, in violation of § 12651(a)(2).

94.     In performing the acts described above, Defendant conspired to present or cause to be presented a false or fraudulent claim for payment or approval and/or make, use, or cause to be

made or used a false record or statement material to a false or fraudulent claim, to the State of California, in violation of § 12651(a)(3).

95.     The State of California or political subdivision, unaware of the foregoing circumstances and conduct of the Defendant, made full payments, which resulted in its being damaged in an amount to be determined.

### IV. <u>Violation of Colorado Medicaid False Claims Act, C.R.S. 25.5-4-303.5, *et seq.*</u>

96.     Relator realleges and incorporates all of the above paragraphs of this Complaint as if fully set forth herein.

97.     In performing the acts described above, Defendant knowingly presented, or caused to be presented, to the State of Colorado, a false or fraudulent claim for payment or approval, in violation of § 25.5-4-305(a).

98.     In performing the acts described above, Defendant knowingly made, used, or caused to be made or used a false record or statement material to a false or fraudulent claim, to the State of Colorado, in violation of § 25.5-4-305(b).

99.     In performing the acts described above, Defendant conspired to present or cause to be presented a false or fraudulent claim for payment or approval and/or make, use, or cause to be made or used a false record or statement material to a false or fraudulent claim, to the State of Colorado, in violation of § 25.5-4-305(g).

100.     The State of Colorado, unaware of the foregoing circumstances and conduct of the Defendant, made full payments, which resulted in its being damaged in an amount to be determined.

### V. <u>Violation of Georgia Taxpayer Protection False Claims Act, Ga. Code Ann. § 23-3-120, *et seq.*</u>

101.    Relator realleges and incorporates all of the above paragraphs of this Complaint as if fully set forth herein.

102.    In performing the acts described above, Defendant knowingly presented, or caused to be presented, to the State of Georgia, a false or fraudulent claim for payment or approval, in violation of § 23-3-121(a)(1).

103.    In performing the acts described above, Defendant knowingly made, used, or caused to be made or used a false record or statement material to a false or fraudulent claim, to the State of Georgia, in violation of § 23-3-121(a)(2).

104.    In performing the acts described above, Defendant conspired to present or cause to be presented a false or fraudulent claim for payment or approval and/or make, use, or cause to be made or used a false record or statement material to a false or fraudulent claim, to the State of Georgia, in violation of § 23-3-121(a)(3).

105.    The State of Georgia, unaware of the foregoing circumstances and conduct of the Defendant, made full payments, which resulted in its being damaged in an amount to be determined.

## VI. Violation of Indiana False Claims and Whistleblower Protection Act, Ind. Code § 5-11-5.5-1 *et seq*., and Indiana Medicaid False Claims and Whistleblower Protection Act, Ind. Code § 5-11-5.7-1 *et seq.*

106.    Relator realleges and incorporates all of the above paragraphs of this Complaint as if fully set forth herein.

107.    In performing the acts described above, Defendant knowingly or intentionally presented, to the State of Indiana, a false claim for payment or approval, in violation of § 5-11-5.5-2(b)(1).

108.     In performing the acts described above, Defendant knowingly or intentionally made or used a false record or statement to obtain payment or approval of a false claim from the State of Indiana, in violation of § 5-11-5.5-2(b)(2).

109.     In performing the acts described above, Defendant conspired to present a false claim for payment or approval and/or made or used a false record or statement to obtain payment or approval of a false claim, from the State of Indiana, in violation of § 5-11-5.5-2(b)(7).

110.     In performing the acts described above, Defendant knowingly presented, or caused to be presented, to the State of Indiana, a false or fraudulent claim for payment or approval, in violation of § 5-11-5.7-2(a)(1).

111.     In performing the acts described above, Defendant knowingly made, used, or caused to be made or used, a false record or statement that is material to a false or fraudulent claim, to the State of Indiana, in violation of § 5-11-5.7-2(a)(2).

112.     In performing the acts described above, Defendant conspired to present or cause to be presented a false or fraudulent claim for payment or approval and/or made, used, or caused to be made or used, a false record or statement that is material to a false or fraudulent claim, to the State of Indiana, in violation of § 5-11-5.7-2(a)(7).

113.     The State of Indiana, unaware of the foregoing circumstances and conduct of the Defendant, made full payments, which resulted in its being damaged in an amount to be determined.

## VII.     Violation of Louisiana Medical Assistance Programs Integrity Law, La. R.S. § 46:437.1 *et seq.*

114.     Relator realleges and incorporates all of the above paragraphs of this Complaint as if fully set forth herein.

115.    In performing the acts described above, Defendant knowingly presented, or caused to be presented, to the State of Louisiana, a false or fraudulent claim, in violation of La. R.S. § 46:438(A).

116.    In performing the acts described above, Defendant knowingly engaged in misrepresentation or made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim, to the State of Louisiana, in violation of La. R.S. § 46:438(B).

117.    In performing the acts described above, Defendant conspired defraud, or attempt to defraud, the medical assistance programs through misrepresentation or by obtaining, or attempting to obtain, payment for a false or fraudulent claim, from the State of Louisiana, in violation of La. R.S. § 46:438(D).

118.    The State of Louisiana, unaware of the foregoing circumstances and conduct of the Defendant, made full payments, which resulted in its being damaged in an amount to be determined.

**VIII.      Violation of Massachusetts False Claims Act, ALM GL ch. 12, § 5, *et seq*.**

119.    Relator realleges and incorporates all of the above paragraphs of this Complaint as if fully set forth herein.

120.    In performing the acts described above, Defendant knowingly presented, or caused to be presented, to the State of Massachusetts, a false or fraudulent claim for payment or approval, in violation of § ALM GL ch. 12, § 5B(a)(1).

121.    In performing the acts described above, Defendant knowingly made, used, or caused to be made or used a false record or statement material to a false or fraudulent claim, to the State of Massachusetts, in violation of § ALM GL ch. 12, § 5B(a)(2).

122.     In performing the acts described above, Defendant conspired to present or cause to be presented a false or fraudulent claim for payment or approval and/or make, use, or cause to be made or used a false record or statement material to a false or fraudulent claim, to the State of Massachusetts, in violation of § ALM GL ch. 12, § 5B(a)(3).

123.     The State of Massachusetts, unaware of the foregoing circumstances and conduct of the Defendant, made full payments, which resulted in its being damaged in an amount to be determined.

### IX. Violation of Minnesota False Claims Act, Minn. Stat. § 15C.01, *et seq.*

124.     Relator realleges and incorporates all of the above paragraphs of this Complaint as if fully set forth herein.

125.     In performing the acts described above, Defendant knowingly presented, or caused to be presented, to the State of Minnesota, a false or fraudulent claim for payment or approval, in violation of Minn. Stat. § 15C.02(a)(1).

126.     In performing the acts described above, Defendant knowingly made, used, or caused to be made or used a false record or statement material to a false or fraudulent claim, to the State of Minnesota, in violation of Minn. Stat. § 15C.02(a)(2).

127.     In performing the acts described above, Defendant conspired to present or cause to be presented a false or fraudulent claim for payment or approval and/or make, use, or cause to be made or used a false record or statement material to a false or fraudulent claim, to the State of Minnesota, in violation of Minn. Stat. § 15C.02(a)(3).

128.     The State of Minnesota, unaware of the foregoing circumstances and conduct of the Defendant, made full payments, which resulted in its being damaged in an amount to be determined.

## X.  Violation of Missouri Health Care Payment Fraud and Abuse Act, Mo. Rev. Stat. § 191.900 *et seq.*

129.    Relator realleges and incorporates all of the above paragraphs of this Complaint as if fully set forth herein.

130.    In performing the acts described above, Defendant knowingly concealed the occurrence of an event affecting an initial or continued right under a medical assistance program to have a health care payment made by a health care payer for providing health care, in violation of Mo. Rev. Stat. § 191.905(1)(2).

131.    In performing the acts described above, Defendant knowingly concealed or failed to disclose information with the intent to obtain a health care payment to which the health care provider or any other health care provider is not entitled, or to obtain a health care payment in an amount greater than that which the health care provider or any other health care provider is entitled, from the State of Missouri, in violation of Mo. Rev. Stat. § 191.905(1)(3).

132.    In performing the acts described above, Defendant presented a claim to a health care payer that falsely indicated that particular health care was provided to a person or persons, when in fact health care of lesser value than that described in the claim was provided, in violation of Mo. Rev. Stat. § 191.905(1)(4).

133.    The State of Missouri, unaware of the foregoing circumstances and conduct of the Defendant, made full payments, which resulted in its being damaged in an amount to be determined.

## XI. Violation of Nevada False Claims Act, Nev. Rev. Stat. § 357.010, *et seq*.

134.    Relator realleges and incorporates all of the above paragraphs of this Complaint as if fully set forth herein.

-24-

135.    In performing the acts described above, Defendant knowingly presented, or caused to be presented, to the State of Nevada, a false or fraudulent claim for payment or approval, in violation of Nev. Rev. Stat. § 357.040(1)(a).

136.    In performing the acts described above, Defendant knowingly made, used, or caused to be made or used a false record or statement that is material to a false or fraudulent claim, to the State of Nevada, in violation of Nev. Rev. Stat. § 357. 040(1)(b).

137.    In performing the acts described above, Defendant conspired to present or cause to be presented a false or fraudulent claim for payment or approval and/or make, use, or cause to be made or used a false record or statement that is material to a false or fraudulent claim, to the State of Nevada, in violation of Nev. Rev. Stat. § 357. 040(1)(i).

138.    The State of Nevada, unaware of the foregoing circumstances and conduct of the Defendant, made full payments, which resulted in its being damaged in an amount to be determined.

### XII.    Violation of New Mexico Fraud Against Taxpayers Act, N.M. Stat. Ann. § 44-9-1, *et seq*., and New Mexico False Claims Act, N.M. Stat. Ann. § 27-14-1, *et seq*.

139.    Relator realleges and incorporates all of the above paragraphs of this Complaint as if fully set forth herein.

140.    In performing the acts described above, Defendant knowingly presented, or caused to be presented, to an employee, officer or agent of the State of New Mexico or a political subdivision or to a contractor, grantee or other recipient of State or political subdivision funds, a false or fraudulent claim for payment or approval, in violation of N.M. Stat. Ann. § 44-9-3(A)(1).

141.    In performing the acts described above, Defendant knowingly made, used, or caused to be made or used a false, misleading or fraudulent record or statement to obtain or support

the approval of or the payment on a false or fraudulent claim, from the State of New Mexico, in violation of N.M. Stat. Ann. § 44-9-3(A)(2).

142.    In performing the acts described above, Defendant conspired to defraud the State of New Mexico or a political subdivision by obtaining approval or payment on a false or fraudulent claim, from the State of New Mexico, in violation of N.M. Stat. Ann. § 44-9-3(A)(3).

143.    In performing the acts described above, Defendant knowingly presented, or caused to be presented, to the State of New Mexico, a claim for payment under the Medicaid program knowing that such claim is false or fraudulent, in violation of N.M. Stat. Ann. § 27-14-4(A).

144.    In performing the acts described above, Defendant knowingly made, used, or caused to be made or used a record or statement to obtain a false or fraudulent claim under the State of New Mexico Medicaid program paid for or approved by the state knowing such record or statement is false, in violation of N.M. Stat. Ann. § 27-14-4(C).

145.    In performing the acts described above, Defendant conspired to defraud the State of New Mexico by getting a claim allowed or paid under the Medicaid program knowing that such claim is false or fraudulent, in violation of N.M. Stat. Ann. § 27-14-4(D).

146.    The State of New Mexico, unaware of the foregoing circumstances and conduct of the Defendant, made full payments, which resulted in its being damaged in an amount to be determined.

**XIII.    Violation of New York State False Claims Act, NY CLS St Fin § 186, *et seq*.**

147.    Relator realleges and incorporates all of the above paragraphs of this Complaint as if fully set forth herein.

148.     In performing the acts described above, Defendant knowingly presented, or caused to be presented, to the State of New York, a false or fraudulent claim for payment or approval, in violation of NY CLS St Fin § 189(1)(a).

149.     In performing the acts described above, Defendant knowingly made, used, or caused to be made or used a false record or statement material to a false or fraudulent claim, to the State of New York, in violation of NY CLS St Fin § 189(1)(b).

150.     In performing the acts described above, Defendant conspired to present or cause to be presented a false or fraudulent claim for payment or approval and/or make, use, or cause to be made or used a false record or statement material to a false or fraudulent claim, to the State of New York, in violation of NY CLS St Fin § 189(1)(c).

151.     The State of New York, unaware of the foregoing circumstances and conduct of the Defendant, made full payments, which resulted in its being damaged in an amount to be determined.

**XIV.     Violation of Oklahoma Medicaid False Claims Act, 63 Okl. St. § 5053, *et seq*.**

152.     Relator realleges and incorporates all of the above paragraphs of this Complaint as if fully set forth herein.

153.     In performing the acts described above, Defendant knowingly presented, or caused to be presented, to the State of Oklahoma, a false or fraudulent claim for payment or approval, in violation of 63 Okl. St. § 5053.1(B)(1).

154.     In performing the acts described above, Defendant knowingly made, used, or caused to be made or used a false record or statement material to a false or fraudulent claim, to the State of Oklahoma, in violation of 63 Okl. St. § 5053.1(B)(2).

155.    In performing the acts described above, Defendant conspired to present or cause to be presented a false or fraudulent claim for payment or approval and/or make, use, or cause to be made or used a false record or statement material to a false or fraudulent claim, to the State of Oklahoma, in violation of 63 Okl. St. § 5053.1(B)(3).

156.    The State of Oklahoma, unaware of the foregoing circumstances and conduct of the Defendant, made full payments, which resulted in its being damaged in an amount to be determined.

### XV.    Violation of Tennessee False Claims Act, Tenn. Code Ann. § 4-18-101, *et seq.*, and Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-181, *et seq.*

157.    Relator realleges and incorporates all of the above paragraphs of this Complaint as if fully set forth herein.

158.    In performing the acts described above, Defendant knowingly presented, or caused to be presented, to an officer or employee of the State of Tennessee or any political subdivision thereof, a false claim for payment or approval, in violation of Tenn. Code Ann. § 4-18-103(a)(1).

159.    In performing the acts described above, Defendant knowingly made, used, or caused to be made or used a false record or statement to get a false claim paid or approved by the State of Tennessee or by any political subdivision, in violation of Tenn. Code Ann. § 4-18-103(a)(2).

160.    In performing the acts described above, Defendant conspired to defraud the State of Tennessee or any political subdivision by getting a false claim allowed or paid by the state or by any political subdivision, in violation of Tenn. Code Ann. § 4-18-103(a)(3).

161.    In performing the acts described above, Defendant knowingly presented, or caused to be presented, to the State of Tennessee, a false or fraudulent claim for payment or approval under the Medicaid program, in violation of Tenn. Code Ann. § 71-5-182(a)(1)(A).

162.     In performing the acts described above, Defendant knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim under the State of Tennessee Medicaid program, in violation of Tenn. Code Ann. § 71-5-182(a)(1)(B).

163.     In performing the acts described above, Defendant conspired to knowingly present, or cause to be presented, to the State of Tennessee, a false or fraudulent claim for payment or approval under the Medicaid program and/or knowingly made, used, caused to be made or used, a false record or statement material to a false or fraudulent claim under the State of Tennessee Medicaid program, in violation of Tenn. Code Ann. § 71-5-182(a)(1)(C).

164.     The State of Tennessee, unaware of the foregoing circumstances and conduct of the Defendant, made full payments, which resulted in its being damaged in an amount to be determined.

### XVI.     Violation of Texas Medicaid Fraud Prevention Law, Tex. Hum. Res. Code § 36.001, *et seq.*, and Award for Reporting Medicaid Fraud, Abuse, or Overcharges, Tex. Gov't Code § 531.101

165.     Relator realleges and incorporates all of the above paragraphs of this Complaint as if fully set forth herein.

166.     In performing the acts described above, Defendant knowingly made, caused to be made, induced, or sought to induce the making of a false statement or misrepresentation of material fact concerning the conditions or operation of a facility in order that the facility may qualify for certification or recertification required by the Medicaid program, in violation of Tex. Hum. Res. Code § 36.002(1)(4)(A).

167.     In performing the acts described above, Defendant knowingly made, caused to be made, induced, or sought to induce the making of a false statement or misrepresentation of material fact concerning information required to be provided by a federal or state law, rule, regulation, or

provider agreement pertaining to the Medicaid program, in violation of Tex. Hum. Res. Code § 36.002(4)(B).

168.    In performing the acts described above, Defendant knowingly made or caused to be made a claim under the Medicaid program for a service or product that is substantially inadequate or inappropriate when compared to generally recognized standards within the particular discipline or within the health care industry, in violation of Tex. Hum. Res. Code § 36.002(7)(B).

169.    In performing the acts described above, Defendant knowingly made or caused to be made a claim under the Medicaid program for a product that had been adulterated, debased, mislabeled, or that is otherwise inappropriate, in violation of Tex. Hum. Res. Code § 36.002(7)(C).

170.    In performing the acts described above, Defendant conspired to commit a violation of § 36.002(4) and/or § 36.002(7), in violation of Tex. Hum. Res. Code § 36.002(9).

171.    The State of Texas, unaware of the foregoing circumstances and conduct of the Defendant, made full payments, which resulted in its being damaged in an amount to be determined.

**XVII.    Violation of Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.1, *et seq*.**

172.    Relator realleges and incorporates all of the above paragraphs of this Complaint as if fully set forth herein.

173.    In performing the acts described above, Defendant knowingly presented, or caused to be presented, to the State of Virginia, a false or fraudulent claim for payment or approval, in violation of Va. Code Ann. § 8.01-216.3(A)(1).

174.    In performing the acts described above, Defendant knowingly made, used, or caused to be made or used a false record or statement material to a false or fraudulent claim, to the State of Virginia, in violation of Va. Code Ann. § 8.01-216.3(A)(2).

175. In performing the acts described above, Defendant conspired to present or cause to be presented a false or fraudulent claim for payment or approval and/or make, use, or cause to be made or used a false record or statement material to a false or fraudulent claim, to the State of Virginia, in violation of Va. Code Ann. § 8.01-216.3(A)(3).

176. The State of Virginia, unaware of the foregoing circumstances and conduct of the Defendant, made full payments, which resulted in its being damaged in an amount to be determined.

## XVIII. Violation of Washington State Medicaid Fraud False Claims Act, Rev. Code Wash. (ARCW) § 74.66.005, *et seq.*

177. Relator realleges and incorporates all of the above paragraphs of this Complaint as if fully set forth herein.

178. In performing the acts described above, Defendant knowingly presented, or caused to be presented, to the State of Washington, a false or fraudulent claim for payment or approval, in violation of Rev. Code Wash. (ARCW) § 74.66.020(1)(a).

179. In performing the acts described above, Defendant knowingly made, used, or caused to be made or used a false record or statement material to a false or fraudulent claim, to the State of Washington, in violation of Rev. Code Wash. (ARCW) § 74.66.020(1)(b).

180. In performing the acts described above, Defendant conspired to present or cause to be presented a false or fraudulent claim for payment or approval and/or make, use, or cause to be made or used a false record or statement material to a false or fraudulent claim, to the State of Washington, in violation of Rev. Code Wash. (ARCW) § 74.66.020(1)(c).

181. The State of Washington, unaware of the foregoing circumstances and conduct of the Defendant, made full payments, which resulted in its being damaged in an amount to be determined.

## **PRAYER FOR RELIEF**

WHEREFORE, Relator respectfully requests that this Court enter judgment against

Defendant as follows:

a.   That the United States be awarded damages in the amount of three times the damages sustained by the United States because of the false claims and fraud alleged in this Complaint, as the Civil False Claims Act, 31 U.S.C. §3729 *et seq.* provides;

b.   That civil penalties be imposed for each and every false claim that the Defendant caused to be presented to the United States;

c.   That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which Relator necessarily incurred in bringing this case;

d.   That Relator be awarded the maximum amount allowed pursuant to the False Claims Act;

e.   MICHIGAN:

   i.   That the State of Michigan be awarded damages in the amount of three times the damages sustained by the State of Michigan because of the false claims alleged in this complaint, as the Michigan Medicaid False Claims Act, M.C.L. §400.612 provides;

   ii.   That civil monetary penalties of $50,000 be imposed against each defendant for violation of M.C.L. §400.607;

   iii.   That necessary expenses, costs, and reasonable attorney's fees be awarded as provided by the Michigan Medicaid False Claims Act; and

   iv.   That Relator be awarded the maximum amount allowed including special damages pursuant to the Michigan Medicaid False Claims Act.

f.   CALIFORNIA:

   i.   That the State of California be awarded damages in the amount of three times the damages sustained by the State of California or political subdivision because of false claims alleged in the complaint, as the California False Claims Act, C.G.C. §12650 *et seq.*, provides;

   ii.   That civil monetary penalties of not less than $5,500 and not more than $11,000 be imposed against each defendant for violation of C.G.C. § 12651;

iii.     That necessary expenses, costs, and reasonable attorney's fees be awarded as provided by the California False Claims Act; and

iv.     That the Qui Tam Plaintiff be awarded the maximum amount allowed including special damages pursuant to the California False Claims Act.

g.     COLORADO:

i.     That the state of Colorado be awarded damages in the amount of three times the damages sustained by the State of Colorado because of the false claims alleged in the complaint, as the Colorado Medicaid False Claims Act, C. R. S 25.5-5-303.5 *et seq.* provides;

ii.     That civil monetary penalties of not less than $5,500 be imposed and not more than $11,000 for violations of C.R.S 25.5-4-305;

iii.     That necessary expenses, costs, and reasonable attorney's fees be awarded as provided by the Colorado Medicaid False Claims Act; and

iv.     The Relator be awarded the maximum amount allowed including compensation for any special damages sustained pursuant to the Colorado Medicaid False Claims Act.

h.     GEORGIA:

i.     That the State of Georgia be awarded damages in the amount of three times the amount sustained by the state or local government because of the false claims alleged in this complaint, in the Georgia Taxpayer Protection Against False Claims Act, O.C.G.A.  § 23-3-120 *et seq.*;

ii.     That civil monetary penalties of not less than $5,500 be imposed and not more than $11,000 for violations be imposed for a violation of the Georgia Medicaid False Claims Act., O.C.G.A. § 23-3-121;

iii.     That necessary expenses, costs and fees be awarded as provided by the Georgia Taxpayer Protection Against False Claims Act; and

iv.     The Relator be awarded the maximum amount allowed including special damages sustained pursuant to the Georgia Taxpayer Protection Against False Claims Act.

v.     That the State of Georgia be awarded damages in the amount of three times the amount sustained by the state or local government because of the false claims alleged in this complaint, in the Georgia Medicaid False Claims Act, O.C.G.A.  § 49-4-168 *et seq.*;

vi.     That civil monetary penalties consistent with the civil penalties provision of the federal False Claims Act, 31 U.S.C. 3729(a), as provided by the O.C.G.A. § 49-4-168.1;

vii.    That all costs and fees be awarded as provided by the Georgia Medicaid False Claims Act; and

viii.   The private person be awarded the maximum amount allowed including special damages sustained pursuant to the Georgia Medicaid False Claims Act.

i.     INDIANA:

i.      That the State of Indiana be awarded damages in the amount of up to three times the damages sustained by the State of Indiana because of the false claims alleged in this complaint, as the Indiana False Claims and Whistleblower Protection Act, Ind. Code § 5-11-5.5-1 *et seq.*, provides;

ii.     That civil monetary penalties of not less than $5,00 be imposed and costs of a civil action brought to recover penalty or damages for violations of the Indiana False Claims and Whistleblower Protection;

iii.    That reasonable attorney's fees be awarded including compensation for any special damages sustained as provided by the Indiana False Claims Act and Whistleblower Protection; and

iv.     That Relator be awarded the maximum amount allowed pursuant to the Indiana False Claims and Whistleblower Protection.

v.      That the State of Indiana be awarded damages in the amount of up to three times the damages sustained by the State of Indiana because of the false claims alleged in this complaint, as the Indiana Medicaid Claims and Whistleblower Protection Act, Ind. Code § 5-11-5.7-1 *et seq.*, provides;

vi.     That civil monetary penalties of not less than $5,00 and not more than $11,000 be imposed to recover penalty or damages for violations of the Indiana Medicaid False Claims and Whistleblower Protection;

vii.    That reasonable attorney's fees be awarded including an amount to cover the expenses and costs of bringing the action and special damages as provided by the Indiana Medicaid False Claims Act and Whistleblower Protection; and

      viii.      That person who initially filed the complaint be awarded the maximum amount allowed pursuant to the Indiana Medicaid Claims and Whistleblower Protection

j.     LOUISIANA:

    i.      That the State of Louisiana be awarded damages in the amount not exceeding $10,000 per violation or up to three times the damages, whichever is greater, sustained by the medical assistance programs because of the false claims alleged in this complaint, as the Louisiana Medical Assistance Programs Integrity Law, La. R.S. § 46:437.1 *et seq.*, provides;

    ii.     That civil monetary penalties of not less than $5,500 and not more than $11,000 be imposed for violation of La. R.S. § 46:437.1 *et seq.*;

    iii.    That necessary expenses, costs, and reasonable attorney's fees be awarded as provided by La. R.S.§ 46:438.6; and

    iv.    That the Qui Tam Plaintiff shall be awarded the maximum amount allowed including special damages sustained pursuant to the Louisiana Medical Assistance Programs Integrity Law.

k.     MASSACHUSETTS:

    i.      That the State of Massachusetts be awarded damages in the amount of three times the damages, including consequential damages sustained by the commonwealth or political subdivision thereof because of the false claims alleged in this complaint, as the Massachusetts False Claims Act, ALM GL ch. 12, §5B, provides;

    ii.     That civil monetary penalties of not less than $5,500 and not more than $11,000 be imposed for violation of ALM GL ch. 12, §5;

    iii.    That necessary expenses, costs, and reasonable attorney's fees be awarded as provided by the Massachusetts False Claims Act; and

    iv.    That Relator be awarded the maximum amount allowed including compensation for any special damages sustained pursuant to the Massachusetts False Claims Act.

l.     MINNESOTA:

    i.      That the State of Minnesota be awarded damages in the amount set forth in the federal False Claims act, plus three times the damages sustained by

the State of Minnesota or political subdivision because of the false claims, as the Minnesota False Claims Act, Minn. Stat. § 15C.01 *et seq.*, provides;

ii.     That civil monetary penalties in the amounts set forth in the federal False Claims Act, United States Code, title 31, section 3729 for a violation Minn. Stat. §15C.02;

iii.    That reasonable expenses, costs, and attorney's fees be awarded as provided by the Minnesota False Claims Act; and

iv.     That Relator be awarded the maximum amount allowed including compensation for any special damages sustained pursuant to the Minnesota False Claims Act.

m.     MISSOURI:

i.      That the State of Missouri be awarded damages in the amount of three times the damages sustained by the state and federal government because of the false claims alleged in this complaint, as the Missouri Health Care Payment Fraud and Abuse Act, Mo. Rev. Stat. § 191.900 to .914 provides;

ii.     That civil monetary penalties of not less than $5,000 and not more than $10,000 be imposed for violation of Mo. Rev. Stat. § 191.905;

iii.    That reasonable and necessary expenses, costs and attorney's fees be awarded as provided by the Missouri Health Care Payment Fraud and Abuse Act; and

iv.     That any person who is the original source of the violation be awarded the maximum amount allowed for damages sustained pursuant to the Missouri Health Care Payment Fraud and Abuse Act.

n.     NEVADA:

i.      That the State of Nevada be awarded damages in the amount of three times the damages sustained by the State of Nevada or political subdivision because of the false claims, as the Nevada Submission of False Claims to State or Local Government, Nev. Rev. Stat. § 357.010 *et seq.*, provides;

ii.     That civil monetary penalties of not less than $5,500 and not more than $11,000 be imposed for violation of Nev. Rev. Stat. § 357.040;

iii.    That reasonable expenses, costs, and attorney's fees be awarded as provided by the Nevada Submission of False Claims to State or Local Government; and

iv.     That the Relator be awarded the maximum amount allowed including compensation for any special damages sustained pursuant to the Nevada Submission of False Claims to State or Local Government.

o.     NEW MEXICO:

i.     That the State of New Mexico be awarded damages in the amount of three times the damages sustained by the State of New Mexico or political subdivision because of the false claims, as the New Mexico Fraud Against Taxpayers Act, N.M. Stat. Ann. § 44-9-1 *et seq.* provides;

ii.     That civil monetary penalties of not less than $5,000 and not more than $10,000 be imposed for violation of N.M. Stat. Ann. § 44-9-3;

iii.     That reasonable expenses, costs, and attorney's fees be awarded as provided by the New Mexico Fraud Against Taxpayers Act; and

iv.     That the Qui Tam Plaintiff be awarded the maximum amount including compensation for any special damages sustained allowed pursuant to the New Mexico Fraud Against Taxpayers Act.

v.     That the State of New Mexico be awarded damages in the amount of three times the damages sustained by the State of New Mexico or political subdivision because of the false claims, as the New Mexico Medicaid False Claims Act N.M. Stat. Ann. § 27-14-1 *et seq.* provides;

vi.     That reasonable expenses, costs, and attorney's fees be awarded as provided by the New Mexico Medicaid False Claims Act; and

vii.     That the Qui Tam Plaintiff be awarded the maximum amount including compensation for any special damages sustained allowed pursuant to the New Mexico Medicaid False Claims Act.

p.     NEW YORK:

i.     That the State of New York be awarded damages in the amount of three times the damages sustained by the State of New York or local government, including consequential damages because of the false claims alleged in this complaint, as the New York State False Claims Act, NY CLS St Fin § 186 *et seq.*, provides;

ii.     That civil monetary penalties of not less than six thousand dollars and not more than twelve thousand dollars be imposed against each defendant for violation of NY CLS St Fin § 189;

    iii.      That necessary expenses, costs, and reasonable attorney's fees be awarded including compensation for special damages, as provided by the New York State False Claims Act; and

    iv.      That the Qui Tam Plaintiff be awarded the maximum amount allowed including compensation for any special damages sustained pursuant to the New York State False Claims Act.

q.    OKLAHOMA:

    i.      That the State of Oklahoma be awarded damages in the amount of three times the damages sustained by the State of Oklahoma because of the false claims alleged in this complaint, as the Oklahoma Medicaid False Claims Act, 63 Okl. St. § 5053 *et seq.*, provides;

    ii.      That civil monetary penalties consistent with the civil penalties provision of the Federal False Claims Act be imposed against each defendant for violation of 63 Okl. St § 5053.1;

    iii.      That necessary expenses, costs, and reasonable attorney's fees be awarded as provided by the Oklahoma Medicaid False Claims Act; and

    iv.      A person who brings the civil action be awarded the maximum amount allowed including compensation for any special damages sustained pursuant to the Oklahoma Medicaid False Claims Act.

r.    TENNESSEE:

    i.      That the State of Tennessee be awarded damages in the amount of three times the damages sustained by the State of Tennessee or political subdivision because of the false claims alleged in this complaint, as the Tennessee False Claims Act, Tenn. Code Ann. § 4-18-101 *et seq.*, provides;

    ii.      That civil monetary penalties of not less than $2,500 and not more than $10,000 for each false claim for violation of Tenn. Code Ann. §4-18-103;

    iii.      That necessary expenses, costs, and reasonable attorney's fees be awarded as provided by the Tennessee False Claims Act, and

    iv.      That a complaint filed by a private person be awarded the maximum amount allowed including compensation for any special damages sustained pursuant to the Tennessee False Claims Act.

      v.       That the State of Tennessee be awarded damages in the amount of three times the damages sustained by the State of Tennessee or political subdivision because of the false claims alleged in this complaint, as the Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-181 *et seq.*, provides;

      vi.     That civil monetary penalties of not less than $5,000 and not more than $25,000 for each false claim for violation of Tenn. Code Ann. § 71-5-182;

      vii.    That necessary expenses, costs, and reasonable attorney's fees be awarded as provided by the Tennessee Medicaid False Claims Act, and

      viii.   That a complaint filed by a private person be awarded the maximum amount allowed including compensation for any special damages sustained pursuant to the Tennessee Medicaid False Claims Act.

s.      **TEXAS:**

      i.       That the State of Texas be awarded damages in the amount of any payment or the value of any monetary or in-kind benefit provided, and interest on the amount of the payment or the value of the benefit sustained by the State of Texas because of the false claims alleged in this complaint, as the Texas Medicaid Fraud Prevention Law, Tex. Hum. Res. Code § 36.001 et seq, provides;

      ii.      That civil monetary penalties of not less than $ 5,500 or the minimum amount imposed as provided by 31 U.S.C. Section 3729(a), if that amount exceeds $ 5,500, and not more than $ 15,000 or the maximum amount imposed as provided by 31 U.S.C. Section 3729(a), if that amount exceeds $ 15,000, for each unlawful act; Tex. Hum. Res. Code § 36.052;

      iii.    That reasonable expenses, costs, and attorney's fees be awarded as provided by the Texas Medicaid Fraud Prevention Law; and

      iv.    That a private plaintiff bringing the action be awarded the maximum amount allowed including compensation for any special damages sustained pursuant to the Texas Medicaid Fraud Prevention Law.

      v.       That a private plaintiff bringing an action be awarded for reporting Medicaid fraud, abuse, or overcharges as provided by Tex. Gov't Code §531.101.

t.      **VIRGINIA:**

      i.       That the State of Virginia be awarded damages in the amount of three times the damages sustained by the State of Virginia because of the false

claims alleged in this complaint, as the Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.1 *et seq.*, provides;

ii.    That civil monetary penalties of not less than $10,957 and not more than $21,916 be imposed against each defendant for violation of Va. Code Ann. § 8.01-216.3;

iii.   That necessary expenses, costs, and reasonable attorney's fees be awarded as provided by the Virginia Fraud Against Taxpayers Act; and

iv.   That Relator be awarded the maximum amount allowed including compensation for any special damages sustained pursuant to the Virginia Fraud Against Taxpayers Act.

u.    WASHINGTON:

i.    That the State of Washington be awarded damages in the amount of three times the damages sustained by the government entity because of the false claims alleged in this complaint, as the Washington State Medicaid Fraud False Claims Act, Rev Code Wash. (ARCW) § 74.66.005 et seq, provides;

ii.    That civil monetary penalties of not less than the greater of $10,957 or the minimum inflation adjusted penalty amount imposed as provided by 31 U.S.C. Sec. 3729(a) and not more than the greater of $21,916 or the maximum inflation adjusted penalty be imposed against each defendant for violation of Rev Code Wash. § 74.66.020;

iii.   That necessary expenses, costs, and reasonable attorney's fees be awarded as provided by the Washington State Medicaid Fraud False Claims Act; and

iv.   That Relator be awarded the maximum amount allowed, including compensation for any special damages sustained pursuant to the Washington State Medicaid Fraud False Claims Act.

v.    That this Court award such other and further relief as it deems proper.

## DEMAND FOR A JURY TRIAL

Relator demands a jury trial on all claims alleged herein.

Respectfully submitted,

/s/ Donna M. MacKenzie
Donna M. MacKenzie (P62979)
OLSMAN MACKENZIE PEACOCK
& WALLACE, P.C.
2684 West Eleven Mile Road
Berkley, MI 48072
248-591-2300 / 248-591-2304 [fax]
dmackenzie@olsmanlaw.com

/s/ David L. Haron
David L. Haron (P14655)
HARON LAW GROUP, PLC
30300 Northwestern Highway
Suite 115
Farmington Hills, MI  48334
(248) 762-7009 / (813) 375-3714 (efax)
dharon@haronlawgroup.com
