<u>SETTLEMENT AGREEMENT</u>

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Attorney's Office for the Eastern District of Michigan and on behalf of the Office of Inspector General ("OIG-HHS") of the Department of Health and Human Services ("HHS") (collectively, the "United States"), Avertest, LLC d/b/a Averhealth ("Averhealth"), and Dr. Sarah Riley ("Relator"), (hereafter collectively referred to as "the Parties"), through their authorized representatives.

<u>RECITALS</u>

A.      Averhealth provides drug testing services to treatment courts, probation departments, and social services agencies nationwide.

B.      Averhealth contracted with the Michigan Department of Health and Human Services for, among other things, drug screening and confirmation testing of oral fluid samples in connection with Michigan's foster care program ("MDDHS Contract").

C.      The MDHHS Contract utilized funds from the Social Services Block Grant (SSBG), a program administered by the HHS Administration for Children and Families. The SSBG allocates federal funds to states to support social services programs.

D.      On March 15, 2021, Relator filed a *qui tam* action in the United States District Court for the Eastern District of Michigan against Averhealth captioned *United States; the State of Michigan; the State of California; the State of Colorado; the State of Georgia; the State Indiana; the State of Louisiana; the State of Massachusetts; the State of Minnesota; the State of Missouri; the State of Nevada; the State of New Mexico; the State of New York; the State of Oklahoma; the State of Tennessee; the State of Texas; the State of Virginia; and the State of*

*Washington ex rel. Riley v. Avertest, LLC d/b/a Averhealth*, No. 2:21-cv-10560 (E.D. Mich.),

pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) ("Civil Action").

       E.      The United States contends that it has certain civil claims against Averhealth

relating to its provision of drug testing services pursuant to the MDHHS Contract, which utilized

federal funds from the SSBG. Specifically, the United States contends that, from May 15, 2019

through November 30, 2020, Averhealth violated the False Claims Act, 31 U.S.C. §§ 3729–33,

when it knowingly submitted, or caused the submission of, claims for payment to MDHHS, and

knowingly made statements material to those claims, concerning positive drug test results for

oral fluid samples that were not confirmed using a mass spectrometric method analytically

different from the screening method, and did not conform to the terms of the MDHHS Contract.

The conduct described in this paragraph is referred to as the "Covered Conduct."

       F.      Averhealth denies the allegations in Paragraph E above and in the Civil Action.

       G.      This Settlement Agreement is neither an admission of liability by Averhealth, nor

a concession by the United States that its claims are not well founded.

       H.      Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of

this Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

       To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the

above claims, and in consideration of the mutual promises and obligations of this Settlement

Agreement, the Parties agree and covenant as follows:

TERMS AND CONDITIONS

       1.      Averhealth shall pay to the United States $1,344,621, inclusive of interest at 4.0%

per annum for 18 months ("Settlement Amount"), of which $422,480 is restitution, by electronic

funds transfer pursuant to written instructions to be provided by the United States Attorney's

2

Office for the Eastern District of Michigan. Averhealth shall pay the Settlement Amount as follows:

      a.      Within 10 days of the Effective Date of this Agreement, Averhealth will make an initial payment to the United States in the amount of $275,000. Averhealth will pay the remaining $1,069,621 within 18 months of the Effective Date of this Agreement, and according to the payment schedule attached as Exhibit A.

      b.      If Averhealth or any of its affiliates is sold, merged, or transferred, or a significant portion of the assets of Averhealth or any of its affiliates is sold, merged, or transferred into another non-affiliated entity, Averhealth shall promptly notify the United States, and all remaining payments owed pursuant to the Settlement Agreement shall be accelerated and become immediately due and payable.

      c.      The Settlement Amount may be prepaid, in whole or in part, without penalty or premium. Except as otherwise provided in this Agreement, no additional interest will be added to the Settlement Amount.

      2.      Conditioned upon the United States receiving the Settlement Amount payments, the United States agrees that it shall pay to Relator by electronic funds transfer 17 percent of each such payment received under the Settlement Agreement ("Relator's Share") as soon as feasible after receipt of the payment.

      3.      Averhealth and Relator reserve their rights with respect to the payment by Averhealth of Relator's attorneys' fees and costs pursuant to 31 U.S.C. § 3730(d).

      4.      Subject to the exceptions in Paragraph 6 (concerning reserved claims) below and subject to Paragraph 9 (concerning disclosure of assets), Paragraph 15 (concerning default), and Paragraph 16 (concerning bankruptcy) below, and upon the United States' receipt of the

3

Settlement Amount, the United States releases Averhealth from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of breach of contract, payment by mistake, unjust enrichment, and fraud.

5.     Subject to the exceptions in Paragraph 6 (concerning reserved claims) below and subject to Paragraph 9 (concerning disclosure of assets), Paragraph 15 (concerning default), and Paragraph 16 (concerning bankruptcy) below, and upon the United States' receipt of the Settlement Amount, Relator, for herself and for her heirs, successors, attorneys, agents, and assigns, releases Averhealth from any civil monetary claim the Relator has on behalf of the United States arising from the Civil Action.

6.     Notwithstanding the release given in Paragraph 4 of this Agreement, or any other term of this Agreement, the following claims and rights of the United States are specifically reserved and are not released:

  a.     Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

  b.     Any criminal liability;

  c.     Except as explicitly stated in this Agreement, any administrative liability or enforcement right, or any administrative remedy, including the suspension and debarment rights of any federal agency;

  d.     Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

  e.     Any liability based upon obligations created by this Agreement;

  f.     Any liability of individuals;

g.      Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

h.      Any liability for failure to deliver goods or services due; and

i.      Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

7.      Relator and her heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relator's receipt of the Relator's Share, Relator and her heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

8.      Subject to the reservation of rights in Paragraph 3 (concerning Relator's attorneys' fees and costs), Relator, for herself, and for her heirs, successors, attorneys, agents, and assigns, releases Averhealth, and its officers, agents, and employees, from any liability to Relator arising from the filing of the Civil Action or under 31 U.S.C. § 3730(d).

9.      Averhealth has provided sworn financial disclosures and supporting documents ("Financial Disclosures") to the United States and the United States has relied on the accuracy and completeness of those Financial Disclosures in reaching this Agreement.  Averhealth warrants that the Financial Disclosures are materially complete, accurate, and current as of the Effective Date of the Agreement.  If the United States learns of material asset(s) in which

Averhealth had an interest of any kind as of the Effective Date of the Agreement (including, but not limited to, promises by insurers or other third parties to satisfy Averhealth's obligations under this Agreement) that were not disclosed in the Financial Disclosures, or if the United States learns of any materially false statement or misrepresentation by Averhealth on, or in connection with, the Financial Disclosures, and if such nondisclosure, false statement, or misrepresentation changes the estimated net worth set forth in the Financial Disclosures by $200,000 or more, the United States may at its option:  (a) rescind this Agreement and reinstate its suit or file suit based on the Covered Conduct or (b) collect the full Settlement Amount in accordance with the Agreement plus one hundred percent (100%) of the net value of Averhealth's previously undisclosed assets. Averhealth agrees not to contest any collection action undertaken by the United States pursuant to this provision, and agrees that it will immediately pay the United States the greater of (i) a ten-percent (10%) surcharge of the amount collected in the collection action, as allowed by 28 U.S.C. § 3011(a), or (ii) the United States' reasonable attorneys' fees and expenses incurred in such an action. In the event that the United States, pursuant to this paragraph rescinds this Agreement, Averhealth waives and agrees not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the United States within 120 calendar days of written notification to Averhealth that this Agreement has been rescinded, and (b) relate to the Covered Conduct, except to the extent these defenses were available on the Effective Date of this Agreement.

10.     Averhealth waives and shall not assert any defenses Averhealth may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth

Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

11.     Averhealth fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Averhealth has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

12.     Averhealth and its officers, agents and employees fully and finally release the Relator and her heirs, agents, successors, attorneys and assigns from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Averhealth has asserted, could have asserted, or may assert in the future against Relator, her heirs, agents, successors, attorneys and assigns, related to the Covered Conduct and the Relator's investigation, filing and prosecution of the Civil Action.

13.     a.     Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of Averhealth, and its present or former officers, directors, employees, shareholders, and agents in connection with:

(1)     the matters covered by this Agreement;

(2)     the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

(3)     Averhealth's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil

investigation(s) in connection with the matters covered by this

Agreement (including attorneys' fees);

(4)      the negotiation and performance of this Agreement;

(5)      the payments Averhealth makes to the United States pursuant to

this Agreement,

are unallowable costs for government contracting purposes (hereinafter referred to as

"Unallowable Costs").

b.      Future Treatment of Unallowable Costs:  Unallowable Costs will be

separately determined and accounted for by Averhealth, and Averhealth shall not charge such

Unallowable Costs directly or indirectly to any contract with the United States.

c.      Treatment of Unallowable Costs Previously Submitted for Payment:

Within 90 days of the Effective Date of this Agreement, Averhealth shall identify and repay by

adjustment to future claims for payment or otherwise any Unallowable Costs included in

payments previously sought by Averhealth or any of its subsidiaries or affiliates from the United

States. Averhealth agrees that the United States, at a minimum, shall be entitled to recoup from

Averhealth any overpayment plus applicable interest and penalties as a result of the inclusion of

such Unallowable Costs on previously-submitted requests for payment. The United States,

including the Department of Justice and/or the affected agencies, reserves its rights to audit,

examine, or re-examine Averhealth's books and records and to disagree with any calculations

submitted by Averhealth or any of its subsidiaries or affiliates regarding any Unallowable Costs

included in payments previously sought by Averhealth, or the effect of any such Unallowable

Costs on the amount of such payments.

14.     Averhealth agrees to cooperate fully and truthfully with the United States'

investigation of individuals and entities not released in this Agreement.  Upon reasonable notice,

Averhealth shall encourage, and agrees not to impair, the cooperation of its directors, officers,

and employees, and shall use its best efforts to make available, and encourage, the cooperation of

former directors, officers, and employees for interviews and testimony, consistent with the rights

and privileges of such individuals.  Averhealth further agrees to furnish to the United States,

upon request, complete and unredacted copies of all non-privileged documents, reports,

memoranda of interviews, and records in its possession, custody, or control concerning any

investigation of the Covered Conduct that it has undertaken, or that has been performed by

another on its behalf.

15.     The Settlement Amount represents the amount the United States is willing to

accept in compromise of its civil claims arising from the Covered Conduct.

a.     In the event that Averhealth fails to pay the Settlement Amount as

provided in the payment schedule set forth in Paragraph 1 above, Averhealth shall be in Default

of its payment obligations ("Default"). The United States will provide a written Notice of

Default, and Averhealth shall have an opportunity to cure such Default within seven (7) calendar

days from the date of receipt of the Notice of Default by making the payment due under the

payment schedule and paying any additional interest accruing under the Settlement Agreement

up to the date of payment. Notice of Default will be delivered to Averhealth, or to such other

representative as Averhealth shall designate in advance in writing. If Averhealth fails to cure the

Default within seven (7) calendar days of receiving the Notice of Default and in the absence of

an agreement with the United States to a modified payment schedule ("Uncured Default"), the

remaining unpaid balance of the Settlement Amount shall become immediately due and payable,

and interest on the remaining unpaid balance shall thereafter accrue at the rate of 12% per annum, compounded daily from the date of Default, on the remaining unpaid total (principal and interest balance).

       b.     In the event of Uncured Default, Averhealth agrees that the United States, at its sole discretion, may (i) retain any payments previously made, rescind this Agreement and bring any civil and/or administrative claim, action, or proceeding against Averhealth for the claims that would otherwise be covered by the releases provided in Paragraph 4 above, with any recovery reduced by the amount of any payments previously made by Averhealth to the United States under this Agreement; (ii) take any action to enforce this Agreement in the Civil Action or in a new action; (iii) offset the remaining unpaid balance from any amounts due and owing to Averhealth by any department, agency, or agent of the United States at the time of Default or subsequently; and/or (iv) exercise any other right granted by law, or under the terms of this Agreement, or recognizable at common law or in equity. The United States shall be entitled to any other rights granted by law or in equity by reason of Default, including referral of this matter for private collection. In the event the United States pursues a collection action, Averhealth agrees immediately to pay the United States the greater of (i) a ten percent (10%) surcharge of the amount collected, as allowed by 28 U.S.C. § 3011(a), or (ii) the United States' reasonable attorneys' fees and expenses incurred in such an action. In the event that the United States opts to rescind this Agreement pursuant to this paragraph, Averhealth waives and agrees not to plead, argue, or otherwise raise any defenses of statute of limitations, laches, estoppel or similar theories, to any civil or administrative claims that are (i) filed by the United States against Averhealth within 120 days of written notification that this Agreement has been rescinded, and (ii) relate to the Covered Conduct, except to the extent these defenses were available on the

10

Effective Date of this Agreement. Averhealth agrees not to contest any offset, recoupment, and /or collection action undertaken by the United States pursuant to this paragraph, either administratively or in any state or federal court, except on the grounds of actual payment to the United States.

16.     In exchange for valuable consideration provided in this Agreement, Averhealth and Relator acknowledge the following:

a.     Averhealth has reviewed its financial situation and warrants that it believes it is able to pay the Settlement Amount pursuant to the terms of this Agreement.

b.     In evaluating whether to execute this Agreement, the Parties intend that the mutual promises, covenants, and obligations set forth herein constitute a contemporaneous exchange for new value given to Averhealth, within the meaning of 11 U.S.C. § 547(c)(1), and the Parties conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange.

c.     The mutual promises, covenants, and obligations set forth herein are intended by the Parties to, and do in fact, constitute a reasonably equivalent exchange of value.

d.     The Parties do not intend to hinder, delay, or defraud any entity to which Averhealth was or became indebted to on or after the date of any transfer contemplated in this Agreement, within the meaning of 11 U.S.C. § 548(a)(1).

e.     If any of Averhealth's payments or obligations under this Agreement are avoided for any reason (including but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code) or if, before the Settlement Amount is paid in full, Averhealth or a third party commences a case, proceeding, or other action under any law

relating to bankruptcy, insolvency, reorganization, or relief of debtors seeking any order for relief of Averhealth's debts, or to adjudicate Averhealth as bankrupt or insolvent; or seeking appointment of a receiver, trustee, custodian, or other similar official for Averhealth or for all or any substantial part of Averhealth's assets, then (i) the United States may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against Averhealth for the claims that would otherwise be covered by the releases provided in Paragraph 4 of this Agreement; and (ii) the United States has an undisputed, noncontingent, and liquidated allowed claim against Averhealth in the amount of $5,825,781, less any payments received pursuant to Paragraph 1 of this Agreement, provided, however, that such payments are not otherwise avoided and recovered from the United States by Averhealth, a receiver, trustee, custodian, or other similar official; (iii) if any payments are avoided and recovered by a receiver, trustee, creditor, custodian, or similar official, the United States shall not be responsible for the return of any amounts already paid by the United States to the Relator; and (iv) if, notwithstanding subparagraph (iii), any amounts already paid by the United States to the Relator pursuant to Paragraph 2 are recovered from the United States in an action or proceeding filed by a receiver, trustee, creditor, custodian, or similar official in or in connection with a bankruptcy case that is filed within two years of the Effective Date of this Agreement or of any payment made under Paragraph 1 of this Agreement, Relator shall, within thirty days of written notice from the United States to the undersigned Relator's counsel, return to the United States all amounts recovered from the United States.

f.      Averhealth agrees that any civil and/or administrative claim, action, or proceeding brought by the United States under Paragraph 16.e is not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) because it would be an exercise of the United States' police

and regulatory power. Averhealth shall not argue or otherwise contend that the United States'

claim, action, or proceeding is subject to an automatic stay and, to the extent necessary, consents

to relief from the automatic stay for cause under 11 U.S.C. § 362(d)(1). Averhealth waives and

shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations,

laches, estoppel, or similar theories, to any such civil or administrative claim, action, or

proceeding brought by the United States within 120 days of written notification to Averhealth

that the releases have been rescinded pursuant to this paragraph, except to the extent such

defenses were available on the Effective Date of this Agreement.

17.     This Agreement is intended to be for the benefit of the Parties only.

18.     Upon receipt of the initial payment described in Paragraph 1, above, the United

States and Relator shall promptly sign and file in the Civil Action a Joint Stipulation of

Dismissal pursuant to Rule 41(a)(1).

19.     Except as provided in Paragraph 3, above, each Party shall bear its own legal and

other costs incurred in connection with this matter, including the preparation and performance of

this Agreement.

20.     Each Party and signatory to this Agreement represents that it freely and

voluntarily enters into this Agreement without any degree of duress or compulsion.

21.     This Agreement is governed by the laws of the United States. The exclusive

venue for any dispute relating to this Agreement is the United States District Court for the

Eastern District of Michigan. For purposes of construing this Agreement, this Agreement shall

be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be

construed against any Party for that reason in any subsequent dispute.

22.     This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties. Forbearance by the United States from pursuing any remedy or relief available to it under this Agreement shall not constitute a waiver of rights under this Agreement.

23.     The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

24.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

25.     This Agreement is binding on Averhealth's successors, transferees, heirs, and assigns.

26.     This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

27.     All Parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

28.     This Agreement is effective on the date of signature of the last signatory to the Agreement ("Effective Date of this Agreement"). Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

<u>THE UNITED STATES OF AMERICA</u>

DATED: __04/30/24__        BY: _____

ANTHONY C. GENTNER
Assistant United States Attorney
United States Attorney's Office
Eastern District of Michigan

DATED: __04/30/24__        BY:   SUSAN
                                 GILLIN

Digitally signed by SUSAN
GILLIN
Date: 2024.04.30 14:14:23
-04'00'

_____
SUSAN E. GILLIN
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

<u>AVERTEST, LLC</u>

DATED: _____        BY: _____

MARK JOHNSON
Chief Executive Officer
Avertest, LLC

DATED: _____        BY: _____

TROUTMAN PEPPER
HAMILTON SANDERS LLP
By:  RICHARD J. ZACK
Counsel for Avertest, LLC

15

## THE UNITED STATES OF AMERICA

DATED: _____     BY:     _____
                             ANTHONY C. GENTNER
                             Assistant United States Attorney
                             United States Attorney's Office
                             Eastern District of Michigan


DATED: _____     BY:     _____
                             SUSAN E. GILLIN
                             Assistant Inspector General for Legal Affairs
                             Office of Counsel to the Inspector General
                             Office of Inspector General
                             United States Department of Health and Human Services


## AVERTEST, LLC

DATED: 4/29/2024     BY:     _____
                             MARK JOHNSON
                             Chief Executive Officer
                             Avertest, LLC


DATED: 04/29/24      BY:     _____
                             TROUTMAN PEPPER
                             HAMILTON SANDERS LLP
                             By:  RICHARD J. ZACK
                             Counsel for Avertest, LLC

15

**DR. SARAH RILEY – RELATOR**

DATED: 4/29/24          BY: _____
                            DR. SARAH RILEY


DATED: 4/29/2024        BY: _____
                            OLSMAN MACKENZIE
                            PEACOCK & WALLACE, P.C.
                            By:  DONNA M. MACKENZIE
                            Counsel for Dr. Sarah Riley


DATED: 29/04/24         BY: _____
                            HOYER LAW GROUP, PLC
                            By:  DAVID L. HARON
                            Counsel for Dr. Sarah Riley

16

**EXHIBIT A**

| Debtor: Avertest, LLC d/b/a Averhealth | | |
|---|---|---|
| **Payment Number** | **Payment Due Date** | **Payment Amount** |
| 1 | 05/15/2024 | $60,000 |
| 2 | 06/01/2024 | $60,000 |
| 3 | 07/01/2024 | $60,000 |
| 4 | 08/01/2024 | $60,000 |
| 5 | 09/01/2024 | $60,000 |
| 6 | 10/01/2024 | $60,000 |
| 7 | 11/01/2024 | $60,000 |
| 8 | 12/01/2024 | $60,000 |
| 9 | 01/01/2025 | $60,000 |
| 10 | 02/01/2025 | $60,000 |
| 11 | 03/01/2025 | $60,000 |
| 12 | 04/01/2025 | $60,000 |
| 13 | 05/01/2025 | $60,000 |
| 14 | 06/01/2025 | $60,000 |
| 15 | 07/01/2025 | $60,000 |
| 16 | 08/01/2025 | $60,000 |
| 17 | 09/01/2025 | $60,000 |
| 18 | 10/01/2025 | $49,621 |
| **Total** | | **$1,069,621** |